WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., an Arizona non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Oasis Investments, L.P., a Utah limited partnership; and Richard M. Knapp,<br><br>Defendants. | No. 04-0123-PHX-ROS<br><br>**ORDER AND OPINION ON MOTION** |

Pending before the Court is Plaintiff Best Western International, Inc.'s ("Best Western") Motion for Partial Summary Judgment. For the following reasons, the motion is granted.

## BACKGROUND

Best Western is a non-profit corporation headquartered in Phoenix, Arizona. (PSOF ¶ 1) Defendant Oasis Investments, L.P. ("Oasis") is a Utah limited partnership. Oasis owns a hotel in Page, Arizona. (PSOF Exhibit A1) Defendant Richard M. Knapp ("Knapp"), the agent of Oasis, is a resident of Utah. (PSOF ¶ 2,3) Best Western operates as a membership organization. Its membership is comprised of individually owned and operated hotels. When a hotel joins Best Western's organization, that hotel benefits from "a worldwide reservation system" and "worldwide marketing campaigns." (PSOF ¶ 5) A member hotel also has "the

1  option to participate in collective purchasing of hotel equipment, furnishing, and supplies."
2  (PSOF ¶ 5) Finally, a member hotel is granted a non-exclusive license to use Best Western's
3  trademarks. In exchange for the services and the license to use the trademarks, a member
4  hotel agrees to pay various fees as well as maintain certain levels of quality and service.
5  (PSOF ¶ 7, 10)

6  On April 27, 2000, Knapp, acting as the agent of Oasis, entered into a membership
7  agreement with Best Western. (PSOF ¶ 15) That membership agreement stated Oasis agreed
8  to "abide by all obligations, as may be established from time to time in the duly adopted [Best
9  Western] Bylaws and Rules and Regulations." (Membership Agreement @ 3) The
10 agreement would terminate "upon default of any obligation" Oasis owed Best Western. Best
11 Western's bylaws set forth the specific mechanism by which a hotel's membership could be
12 cancelled. According to the bylaws, the Best Western "Board of Directors shall have the
13 right to cancel any membership" upon the occurrence of certain events, such as the failure
14 to meet minimum quality thresholds. (Bylaws @ 5) Prior to cancellation, however, the
15 bylaws require Best Western to "notify the member, *by certified mail*, return receipt
16 requested, that the Board is considering cancellation of the membership." (Id. emphasis
17 added) On April 24, 2001, Best Western sent notice to Oasis, via certified mail, that the hotel
18 had recently been evaluated and found lacking in certain areas. (Exhibit 1 to Reply) Thus,
19 the hotel's membership was in jeopardy. Apparently the parties were able to agree upon a
20 corrective action plan and Oasis remained a member hotel through May 8, 2003. On that
21 date Best Western sent notice, via express mail, that Oasis' membership had been cancelled
22 due to non-compliance with the corrective action plan. (MSJ, Exhibit B1)

23 According to the membership agreement, once the membership was terminated Oasis
24 was afforded fifteen days to "remove from public view and cease using all Best Western
25 Symbols." (Membership Agreement @ 5) Failure to stop using the Best Western symbols
26 within fifteen days of termination subjected Oasis to liquidated damages "in an amount equal
27
28

1   to fifteen percent (15%) of the mean of the Hotel's room rates per room per day multiplied
2   by the total number of rooms." (Id.)
3       On July 20 and 22, 2003, Best Western sent an employee to Oasis' hotel. That
4   employee observed that Oasis "had failed to remove the signs and/or collateral items
5   containing the Best Western Marks in connection with the Hotel and continued to hold the
6   Hotel out to the public as a Best Western member." (MSJ @ 5) Best Western then sent a
7   letter demanding Oasis stop using Best Western's trademarks. Also in that letter was a
8   demand that Oasis pay Best Western the amount still owing on Oasis' operating account with
9   Best Western. There is no indication in the record that Oasis ever responded to this letter.
10      Best Western filed this action against Oasis and Knapp on January 21, 2004. The
11  complaint contained breach of contract counts as well as trademark infringement counts.
12  Best Western seeks summary judgment only as to the breach of contract claims (Counts I,
13  II, III). Oasis and Knapp filed a timely response to the motion for summary judgment. In
14  that response Oasis and Knapp relied exclusively on an argument that Best Western failed
15  to provide proper notice of membership cancellation. The Court has jurisdiction over this
16  cause of action pursuant to 28 U.S.C. § 1332 (diversity of parties) and 28 U.S.C. § 1367
17  (supplemental jurisdiction). For the following reasons, partial summary judgment is granted
18  in favor of Best Western.
19  **ANALYSIS**
20  **I. Summary Judgment Standard**
21      A court must grant summary judgment if the pleadings and supporting documents,
22  viewed in the light most favorable to the non-moving party, "show that there is no genuine
23  issue as to any material fact and that the moving party is entitled to a judgment as a matter
24  of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
25  Substantive law determines which facts are material, and "[o]nly disputes over facts that
26  might affect the outcome of the suit under the governing law will properly preclude the entry
27  of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In
28

addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. at 255. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. Id.

The Rules of Practice of the United States District Court for the District of Arizona ("Local Rules") provide specific guidance regarding the facts a party must submit when either seeking or opposing summary judgment. Local Rule 56.1 provides that a party opposing summary judgment must "set forth separately from the memorandum of law, and in full, the specific facts on which [the] party relies in support" of its motion. The facts must be "set forth in serial fashion and not in narrative form." Id. Also, "[a]s to each fact, the statement shall refer to a specific portion of the record where the fact may be found." Id.

## II. Breach of Contract

In the membership agreement, the parties agreed their contract would be governed by Arizona law. Also, Best Western is headquartered in Arizona and Oasis' hotel is located in Arizona. Thus, the law of Arizona "controls both the construction of the contract and the question of breach." In re James E. O'Connell Co., Inc., 799 F.2d 1258, 1260 (9th Cir. 1986). According to Arizona law, "[i]n order to prove that there has been a breach of contract . . . a plaintiff is required to prove the existence of a contract, its breach, and the resulting

damage." Coleman v. Watts, 87 F. Supp.2d 944, 955 (D. Ariz. 1998). It is undisputed that the parties entered into a contract (the membership agreement) on April 27, 2000. (Complaint ¶ 21, Answer ¶ 21) Therefore, the only issues before the Court are whether Oasis breached that contract and the resulting damages, if any.

Best Western asserts that Oasis breached the contract in two ways. First, by failing to pay Best Western certain "fees, dues, charges and costs." And second, by continuing to use the Best Western trademarks after the membership agreement was terminated. The Court addresses each alleged breach separately.

## A. Failure to Pay Costs

The alleged failure to pay certain costs is recounted in Counts I and II of Best Western's complaint. According to the parties' contract, Oasis agreed "to timely pay all fees, dues, charges and assessments imposed generally on the membership by the Board." (MMSJ, Ex. A1 @ 3) The contract also required that Oasis timely pay "the cost of all goods or services provided by or ordered through Best Western." (PMSJ, Ex. A1 @ 3) The contract provided that if Oasis failed to remain current on the various amounts due to Best Western then the past due amount would "bear interest at the rate of one and one half percent (1.5%) per month from the due date until paid." Count I alleges that Oasis breached the parties' contract by failing to pay amounts due and owing under the contract. Count II of the complaint alleges "Best Western has rendered services and provided supplies on an open account" and Oasis has failed to "pay for such services and supplies when due in accordance with the [contract]." (Complaint @ 11)

In its complaint filed on January 21, 2004, Best Western alleged that under Counts I and II Oasis owed Best Western $57,996.61 representing "certain fees, dues, charges and costs imposed on the membership, including interest." The amount owed increased while this suit was pending such that as of May 1, 2005, Best Western alleged the total amount owing was $75,916.32. To substantiate the amount owing, Best Western's Motion for Partial Summary Judgment included an affidavit from an accounting clerk as well as account

statements reflecting the charges to Oasis' account. (PMSJ, Ex. C) In its response to the motion for summary judgment, Oasis did not present any evidence as to the validity of the past due amount. In fact, Oasis did not even address the issue.

A party responding to a motion for summary judgment must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). Oasis completely disregarded its burden to point to specific facts on material issues that would prevent the entry of summary judgment on this issue. See Lockwood v. Wolf Corp., 629 F.2d 603, 609 (9th Cir. 1980) (affirming summary judgment when party "did not controvert the facts" upon which summary judgment was based). Because Oasis failed to point to any aspect of the record that calls into question the validity of the past due amounts, Best Western is entitled to summary judgment as to Counts I and II.

**B. Continued Use of Trademarks**

The other alleged breach of contract involves Oasis' continued use of Best Western's trademarks after the membership agreement had been terminated. According to the agreement, the license to use Best Western's trademark was terminated upon termination of the membership agreement. Best Western believes that the agreement was terminated on May 8, 2003 due to Oasis' failure to maintain the requisite quality levels at its hotel. Oasis responds that the notice of termination was not properly conveyed, thus the termination was not effective. (Response to MSJ) The Court rejects Oasis' argument as an inaccurate portrayal of the terms of the agreement.

**1. Notice of Termination**

The agreement signed by the parties was set to terminate "upon default of any obligation to Best Western, as more fully set forth in the Bylaws, Rules and Regulations, and Operations Manual." (PMSJ, Ex. A1 @ 5) According to the Bylaws,

> [Best Western's] Board of Directors shall have the right to cancel any membership under one (1) or more of the following conditions. . . .
> (1) Failure to pay dues or other fees, rental, charges or assessments within the time set by these Bylaws or by Best Western.
> (2) Failure to conform to the obligation to meet the standards as set forth in the Membership Agreement, Articles of Incorporation, Bylaws, current Rules and Regulations or Board policies.
> (3) Failure to operate, manage or maintain the property in such a way as to affect credit to Best Western and its members.

On April 24, 2001, Best Western sent notice via certified mail that a recent "Global Quality Assurance Assessment" indicated that Oasis' hotel had achieved a substandard quality score. This substandard score placed Oasis' membership in jeopardy pursuant to condition number two of the Bylaws quoted above. On May 8, 2003, Best Western sent notice to Oasis via express mail that the hotel had not achieved acceptable quality scores during a recent evaluation and the hotel's membership was cancelled. In its Response to the Motion for Partial Summary Judgment, Oasis appears to concede that Best Western had legitimate grounds to cancel its membership. Oasis' Response does not contain any argument that Best Western was not entitled to cancel the membership; instead, the Response focuses on the notice given regarding that cancellation.

According to Oasis, the "Membership Agreement, By-Laws and Rules and Regulations, provide that [Best Western's] *sole* authorized method of providing notice to the member of its intent to terminate the membership is via Certified Mail. Here, [Best Western] failed to comply with said requirement." Oasis is correct that once cancellation is authorized, the Bylaws as well as the Rules and Regulations provide specific guidance on how notice of possible cancellation must be provided. The Bylaws state that "[p]rior to cancellation of a membership . . . Best Western shall notify the member, by certified mail, return receipt requested, that the Board is considering cancellation of the membership." However, the Bylaws do not provide, nor does Oasis point to any other evidence in the record, that *notice of termination*, as opposed to *notice of intent to terminate*, be sent via certified mail.

The Rules and Regulations provide a similar framework for cancellations. According to that document,

> If the [Best Western] President and Chief Executive Officer or his designee believes a member is in violation of [its obligation to meet quality standards] . . . he or his designee shall send written notice of such violation to the member by certified mail, return receipt requested. The notice shall specify in detail the violations charged to exist and the facts believed to support the charged violations. (RMSJ, Ex. 3 @ 18)

There is no requirement in the Rules and Regulations that notice of cancellation be sent via certified mail, rather the only required mailing via certified mail is written notice of violations. Best Western abided by this requirement by sending its April 24, 2001 letter via certified mail. The Court concludes that there is no genuine issue of material fact regarding the adequacy of notice provided to Oasis by Best Western. Best Western sent notice via certified mail that it was considering cancelling Oasis' membership. (Plaintiff's Reply, Ex. 1) Best Western was not required to send notice via certified mail of actual cancellation. Having found that notice of termination was properly conveyed, the propriety of Oasis' actions after cancellation becomes relevant.

### 2. Continued Use of Trademarks

The license to use Best Western's trademarks terminated when the membership agreement was cancelled on May 8, 2003. Oasis was afforded fifteen days after the cancellation to "remove from public view and cease using all Best Western Symbols." In its Motion for Partial Summary Judgment, Best Western submitted evidence that Oasis had continued to use Best Western's trademarks more than fifteen days after cancellation. Oasis did not point to any specific facts in the record calling into question Best Western's evidence. Best Western, therefore, has established that Oasis continued to use the trademarks after the membership agreement was terminated and fifteen days had elapsed.

The membership agreement provided specific consequences if Oasis chose to continue using Best Western's trademarks.

> For each day during which any Best Western Symbol [is] used in connection with the Hotel, after fifteen (15) days following

>termination of this License Agreement, Best Western may elect to claim from [Oasis] daily damages in an amount equal to fifteen percent (15%) of the mean of the Hotel's room rates per room per day multiplied by the total number of rooms. ... It is understood and agreed that said amount is fixed as liquidated damages because of the difficulty of ascertaining the exact amount of damages that may be sustained because of such use. It is further understood and agreed that said amount fixed as liquidated damages is a reasonable amount, considering the damages that Best Western will sustain in the event of such use.

Best Western claims that using this formula, as of July 22, 2003 Oasis owed $50,976.00 in liquidated damages. Under Arizona law, a liquidated damages clause is enforceable only if two criteria are met. "First, the amount fixed in the contract must be a reasonable forecast of just compensation for the harm that is caused by the breach. Second, the harm that is caused by any breach must be one that is incapable or very difficult of accurate estimation." Larson-Hegstrom & Assocs., Inc. v. Jeffries, 145 Ariz. 329, 333 (Ariz. Ct. App. 1985) (citing Restatement (Second) of Contracts § 356). Determining if these two criteria have been met "must be determined in light of all the facts and circumstances" of the specific case. Id. Also, when the harm that is caused by the breach is especially difficult to prove, "the easier it is to show that the amount fixed [in the contract] is reasonable." Restatement (Second) of Contracts § 356 cmt. b. In this case, the Court concludes that it would be very difficult for Best Western to accurately estimate the loss suffered due to Oasis' unauthorized use of its trademarks. The Court, therefore, gives great weight to the liquidated damages formula given in the contract. Oasis did not contest the reasonableness of the liquidated damages formula. The Court concludes there is no issue of material fact regarding liquidated damages. Thus, the liquidated damages clause in the contract is enforceable and Best Western is entitled to recover under that clause.

1  Accordingly,

2  Best Western's Motion for Partial Summary Judgment (Doc. # 13) is GRANTED.

3  DATED this  11/8/05                                     .

4

5

6  _____
   Roslyn O. Silver
   United States District Judge